UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FATHIREE ALI,

        Plaintiff,                    Case No. 1:18-cv-1201

v.                                         Honorable Janet T. Neff

JOHANNA BETTS et al,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Washington. The Court also will dismiss Plaintiff's due process and mandamus claims against the remaining Defendants.

**Discussion**

I.       Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred while Plaintiff was housed at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan and the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues MCF Prisoner Counselor Johanna Betts, MDOC Northern Regional Administrative Assistant Barbara Storey, and MDOC Director Heidi E. Washington.

Plaintiff recites a lengthy history of various attempts to take a variety of property items, beginning in 1992 and continuing until 2016, the year during which the incidents at issue in this complaint occurred. In 1992, following an administrative hearing, Plaintiff was allowed to keep certain hair clippers. Shortly thereafter, another attempt to take the hair clippers resulted in another administrative decision, authorizing Plaintiff to keep his hair clippers "under the condition of Cain v. MDOC." (Compl., ECF No. 1, PageID.4.)

In December 1999, an assistant resident unit manager upheld a package mail rejection of Plaintiff's Eddie Bauer coat, which had been returned under the lifetime service warranty. On appeal to the Office of Policy and Hearings, the rejection was overturned, and the coat was returned to Plaintiff.

Also in December 1999, Plaintiff was issued a notice of intent (NOI) to take his Smith Corona typewriter, owner's manual, floppy disks, daisy wheels, mouse pad, and one volume of the Michigan Compiled Laws. After a hearing, the property was returned to Plaintiff. In January

2000, Plaintiff was again issued an NOI to take his word processor. Again, following a hearing, the word processor and accessories were returned to Plaintiff.

In 2004, the MDOC stipulated to a settlement agreement in *Cain v. Mich. Dep't of Corr.*, Nos. 88:61119-AZ, 93-14975-CM, 96-16341-CM (Mich. Ct. Claims), which permitted prisoners such as Ali to continue to maintain, use, and possess typewriters and/or word processors (which were classified as legal property), winter coats, gloves, musical instruments, clippers, and other property items.

In 2008, Plaintiff's Eddie Bauer coats were again confiscated and an NOI issued. The coats were returned to Plaintiff after an administrative hearing. Then MCF Warden Harry clarified that Plaintiff's coats were "grandfathered in." (Compl., ECF No. 1, PageID.6.)

On March 17, 2015, an administrative law judge conducted a hearing on Plaintiff's excess property, concluding that Plaintiff was permitted to use and possess seven footlockers and their content of excess legal property. The hearing result included a list of permitted property.

With this background, Plaintiff recites the incidents about which he complains. In early 2016, Plaintiff sent out his broken word processor for repair. Defendant Betts, however, refused to release Plaintiff's funds for the repairs. Plaintiff filed a complaint with the Michigan Attorney General, as well as a grievance. Betts came to Plaintiff's cell, saying, "You contacted the attorney general's office; if you don't stop these grievances and complaints you're going to lose more than your typewriter, I'll see to it that you won't have any property." (*Id.*, PageID.7.)

On June 15, 2016,[1] Adminstrative Assistant D. Brazee and Sergeant Hargett allegedly confiscated ninety percent of Plaintiff's property. Brazee wrote two NOIs, one on the

---

[1] The complaint lists the year as "2015." However, given the context of the allegations and the dates immediately preceding and following, it appears that the actual year of the incident was 2016.

3

legal property and the other on personal property. In addition, a contraband removal was issued for the property taken.

Prisoner Counselor West reviewed the NOIs with Plaintiff on June 16, 2016, and Plaintiff was given a copy of the NOIs and the contraband removal listing. Plaintiff protested the taking of his property and told West that he had documentation permitting him to possess all of the property. West advised Plaintiff that he would receive a hearing, at which time he could present his evidence to the hearing officer. Plaintiff alleges, however, that he never received a hearing. Instead, Defendant Betts allegedly had Plaintiff transferred to ECF on July 12, 2016, before the hearing was held. When Plaintiff asked about his property, ECF Property Room Officer Schmidt informed Plaintiff, "It is standard practice for property to be forwarded 'catch-up' to Oaks, and then a date is scheduled for a hearing." (*Id.*, PageID.7.)

On July 18, 2016, Plaintiff's wife called Defendant Director Washington about Plaintiff's property concerns. She was told that the office would investigate and call her back. By July 20, 2016, the time for holding a hearing, as provided in MDOC policy and regulations, had expired. Plaintiff therefore filed a grievance, GT #87032, directed to Director Washington and the MDOC. Upon instructions from Defendant Washington, the grievance was refiled at MCF as MCF 2016-08-1005-28a.

On July 28, 2016, Defendant Betts, acting as a hearing officer, held a hearing outside of Plaintiff's presence. Defendant Betts falsely represented that Plaintiff was present at the hearing and made certain statements. Betts upheld the property confiscation. Plaintiff alleges that Betts did not allow Plaintiff to present evidence that would prove he was entitled to keep the property. Plaintiff contends that Betts' conduct was taken in retaliation for Plaintiff's having filed grievances. Defendant Betts neither mailed nor otherwise gave Plaintiff notice of the decision. In

early August 2016, Plaintiff asked officer Schmidt about the status of his hearing. Schmidt allegedly responded, "I don't know how they did it, but Muskegon held the hearing in your absence." (*Id.*, PageID.8.)

Plaintiff's wife again called Defendant Washington. The call was transferred to Defendant Barbara Storey, who informed Plaintiff's wife, "'[B]ecause your husband filed grievances he is not going to receive a hearing, nor will his property be returned.'" (*Id.*) Plaintiff's wife made additional calls and filed a complaint with the Ombudsman's office.

Plaintiff alleges that Defendants Washington and Storey were aware of Defendant Betts' adverse actions and denial of a hearing, but they failed to intervene to prevent the violations of Plaintiff's rights. Plaintiff also alleges that Defendant Storey had Plaintiff's property transferred to ECF. He contends that Defendants collectively failed to adhere to their policies of maintaining the status quo on Plaintiff's property and, instead, disposed of that property. Plaintiff asserts that he was not treated like other similarly situated prisoners.

On January 13, 2017, Richard Russell denied Plaintiff's grievance at Step III of the grievance process. Plaintiff alleges that Russell is Defendant Washington's agent. Plaintiff complains that the grievance denial was not delivered until February 15, 2017.

Plaintiff asserts nine counts in his complaint: (1) denial of equal protection; (2) denial of procedural due process; (3) retaliation in violation of the First Amendment; (4) breach of contract, as established by grievance resolutions, settlement agreements, and administrative hearing decisions; (5) promissory estoppel; (6) failure to instruct, train, and supervise and failure to adopt adequate policies; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; and (9) mandamus.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

6

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Defendant Washington

Plaintiff alleges that Defendant Washington was made aware of (both by grievances and phone calls), but failed to take action to prevent, Betts' retaliation and the improper taking of Plaintiff's property, which allegedly violated policy, denied him due process and equal protection, and caused him emotional distress. Plaintiff also alleges that Defendant Washington failed to create adequate policies and failed to train, which would have prevented Betts' actions.

A supervisor may be held individually liable for failing to train her subordinates. *See Phillips v. Roane Cty.*, 534 F.3d 531, 543 (6th Cir. 2008). However, in order to state a claim for failure to train, the plaintiff must show that the defendant failed to train its employees in a relevant respect and that the failure to train amounted to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). As a result, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 563 U.S. at 61 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997).

Plaintiff fails to allege facts demonstrating the requisite deliberate indifference. Although Plaintiff complains that his property previously was temporarily confiscated in 1992, 1999, 2000, 2008, and 2014, on all of those prior occasions, the hearing officer found in Plaintiff's

7

favor and returned the property to Plaintiff. As a result, the prior events that Plaintiff lists do not support the existence of a pattern of constitutional violations evidencing a failure to train. Moreover, no part of the alleged pattern of conduct occurred under Defendant Washington's leadership, as she was not appointed to her position as director of the MDOC until May 2015. *See* Mich. Dep't of Corr. Website, https://www.michigan.gov/corrections/0,4551,7-119-68886_ 68887---,00.html (last visited Nov. 2, 2018). She therefore may not be held individually liable for their occurrence.

Plaintiff's only other allegations against Defendant Washington are that she failed to adequately supervise her subordinates and failed to take action in response to Plaintiff's grievances and complaints. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. He therefore fails to state a claim against Defendant Washington in her individual capacity.

To the extent that Plaintiff seeks to hold Defendant Washington liable as a policymaker in her official capacity for failing to train her employees and failing to develop adequate policies, his claim is barred by sovereign immunity. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Plaintiff may not maintain a §1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will*, 491 U.S. 58). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, the

Court also dismisses the suit for monetary and declaratory relief against Defendant Washington in her official capacity.

Plaintiff, however, also seeks prospective injunctive relief from Defendant Washington in her official capacity. An official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, in the absence of allegations demonstrating constitutional violations, Plaintiff is not entitled to prospective injunctive relief. As previously discussed, Plaintiff has failed to allege the sort of pattern of constitutional violations that demonstrate deliberate indifference. *Connick*, 563 U.S. at 60 (citing *City of Canton*, 489 U.S. at 388). Plaintiff therefore has failed to allege facts supporting a failure to train that would entitle him to injunctive relief.

Moreover, to the extent that Plaintiff claims that a policy led to his deprivation, he also fails to demonstrate a constitutional violation. In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. Here, Plaintiff fails to allege the existence of a policy that led to his injury. Plaintiff acknowledges that a prisoner ordinarily is not allowed to possess the property in question, either because it was excess property or because it was contraband, and he admits that he was permitted to possess the property only because it was grandfathered in. Thus, the fact that officers on five occasions over the course of a dozen years concluded that the property should

temporarily be confiscated subject to a hearing cannot demonstrate a failure to train. On every occasion, the policy in question provided for a hearing that resulted in Plaintiff being permitted to retain his property.

Indeed, notwithstanding his global assertions of an inadequate policy that led to his loss of property, Plaintiff does not actually allege that policy caused the loss of his property. Instead, Plaintiff alleges that prison policy barred Defendant Betts from holding a hearing outside Plaintiff's presence and required Betts to consider Plaintiff's documentation, which would have proved that Plaintiff was entitled to retain the property. Thus, Plaintiff fails to allege that the lack of an adequate policy caused his injury.

For all these reasons, Plaintiff fails to state a claim against Defendant Washington.

### B. Due Process Violation

Plaintiff alleges that Defendant Betts deprived him of his property without procedural due process. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

Although Plaintiff makes conclusory allegations that Defendants Washington and Storey either had a policy of allowing unauthorized takings of property or failed to adequately train their subordinates, he simultaneously alleges that, under prison policy and prior adjudications,

11

he was permitted to retain property that was otherwise contraband or excessive. And he alleges that Defendant Betts violated prison policy by holding a hearing outside Plaintiff's presence based on manufactured statements. Thus, he alleges that Defendant Betts' taking of his property was in violation of prison policy.

Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim will be dismissed.

### C. Mandamus

Plaintiff's ninth count seeks a writ of mandamus, directing Defendants to follow their own policies, regulations, and prior adjudicative decisions. Federal courts have no authority to issue writs of mandamus to direct state officials to conform their conduct to state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984); *Haggard v. Tennessee*, 421 F.2d 1384 (6th Cir. 1970). Therefore, the Court may not issue a writ of mandamus requiring Defendants to follow their own law.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's due process and mandamus claims against the remaining Defendants.

An order consistent with this opinion will be entered.

Dated:   November 8, 2018            /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge